*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MAIRA CASTELLANE-JACONETTA,

            Plaintiff,

vs.

JAY FORNORO, *et al.*,

            Defendants.

Civil Action No.: 19-13946 (FLW)

OPINION

**WOLFSON, Chief Judge:**

Plaintiff Maira Castellane-Jaconetta ("Plaintiff" or "Castellane-Jaconetta"), a former recruit at the New Jersey State Police Academy, alleges that defendants Sergeant Jay Fornoro, the New Jersey State Police, and the State of New Jersey (collectively, "Defendants") discriminated against her based on her gender, in violation of Title VII, 42 U.S.C. 1983 ("Section 1983"), and the New Jersey Law Against Discrimination ("NJLAD"). Plaintiff also asserts various other state law tort claims based on the emotional impact of Sergeant Fornoro's allegedly discriminatory conduct. Defendants moves to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). Plaintiff opposes the motion. For the reasons set forth below, Defendants' Motion to Dismiss is **GRANTED** as to Plaintiff's federal claims. Plaintiff's federal claims are dismissed with prejudice as barred by the statute of limitations, and the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

1

In 2014, Plaintiff began the application process to join the New Jersey State Police. ECF No. 1, Compl. ¶3. After passing the physical examination, she applied to the New Jersey State Trooper Academy (the "Academy") in Sea Girt New Jersey and waited for admission. *Id*. at ¶¶3-4. Plaintiff alleges that she "faced an unusually long enrollment period" prior to being granted admittance, despite having received "a near perfect score" on the physical examination. *Id*. at ¶5. Eventually, Plaintiff was selected for the Academy and enrolled on January 9, 2017. *Id.* at ¶1.

The training program at the Academy is a twenty-four-week long residential training program. *Id*. at ¶¶5-6. The recruits live at the Academy on the weekdays and engage in rigorous training drills as part of the learning process. *Id*. at ¶¶5-8. The recruits must report for training at 6:00 a.m. on Monday and remain at the Academy until 6:00 p.m. on Friday. *Id*. at ¶6. Each day the recruits begin their training at 6:00 a.m. and have breakfast, lunch, and dinner in the Academy's mess hall. *Id*. At the conclusion of the day, the recruits retire to their ten-person dormitories and the Academy has a 10:00 p.m. "lights out" policy. *Id*.

Plaintiff alleges that during her time at the Academy, she was "an exemplary recruit, showing up early, helping other recruits, and her equipment was always kept in order." *Id*. at ¶7. Despite her model behavior, Plaintiff was allegedly targeted by the instructors at the Academy.

On January 16, 2017, Plaintiff was allegedly pulled out of a formation by Sergeant Fornoro, one of the instructors at the Academy, and chastised because she was wearing prescription glasses instead of contact lenses. *Id*. at ¶¶9-11. At that time, Sergeant Fornoro remarked, "[y]ou will always be at the bottom of the barrel for constructive force. First, you are female, you are small and you wear glasses. You can't do anything about being female. You can't do much about your weight. But you can do something about the glasses." *Id*. at ¶9. A few days later, the recruits

attended a training on discrimination, and Plaintiff approached the instructor, Sergeant Crawford, and relayed the incident with Sergeant Fornoro. *Id*. Sergeant Crawford recorded the information and informed Plaintiff that he would follow up with her at a later time. *Id*. Plaintiff has not alleged whether Sergeant Crawford, in fact, followed up with her.

Approximately a week later, during boxing training, the Academy's instructors[1] allegedly encouraged Plaintiff's sparring partner to punch her forcefully. *Id*. at ¶¶13-14. The instructors allegedly shouted, "[y]ou aren't doing her any favors. If you don't punch her harder, you're going to have to fight me." *Id*. at ¶13. Then, the instructors assigned Plaintiff a "larger and taller" opponent and gave the same instructions: "[i]f you don't punch her harder, you're going to have to fight me." *Id*. at ¶14. During the training Plaintiff sustained several injuries, including, a swollen face, bruised lip, and bleeding nose. *Id*. at ¶15. That same day, on January 27, 2017, Plaintiff decided to disenroll from the Academy. *Id*. at ¶17.

In addition to the alleged discriminatory conduct directed specifically at Plaintiff, the Complaint alleges that Plaintiff observed Sergeant Fornoro generally disparage the female recruits. Plaintiff alleges that on one occasion the recruit class was granted a "lights out" time later than the usual 10:00 p.m. requirement. *Id*. at ¶¶6,12. However, the class commander and other individuals on the chain of command apparently failed to inform the female recruits, and an instructor found the female recruits in bed at the usual time, resulting in punishment for the entire recruit class. *Id*. at ¶12. While the class was being lectured on the importance of following the command chain,

---

[1] Plaintiff has not identified the specific instructors involved in the boxing incident.

Sergeant Fornoro allegedly commented, "I see it differently. I see five selfish females who don't care about anyone but themselves." *Id*.

After leaving the Academy, Plaintiff contacted Sergeant Fornoro in order to address his conduct toward her and the other female recruits. *Id*. at ¶18. Plaintiff alleges that during the conversation, Sergeant Fornoro adamantly refused to apologize. *Id*. Thereafter, Plaintiff also contacted Sergeant Crawford in order to file what Plaintiff professes she believed was an Equal Employment Opportunity Commission ("EEOC") complaint against Sergeant Fornoro.[2] *Id*. On March 8, 2017, New Jersey's EEO Director, Joanne Stipick, contacted Plaintiff and advised her to contact Sergeant Crawford and file a complaint within ten (10) days. *Id*. at ¶20. Plaintiff contacted Sergeant Crawford on March 20, 2017, and inquired whether she could file an "informal" complaint to bring the discriminatory conduct to Sergeant Fornoro's attention. *Id*. On March 24, 2017,

---

[2] Plaintiff's Complaint uses the acronyms EEO and EEOC interchangeably, and does not acknowledge the distinction between the Federal Equal Employment Opportunity Commission ("EEOC"), and the New Jersey State Police's Internal Equal Employment Opportunity ("EEO") Office. For example Plaintiff alleges that she sought "to file an EEOC complaint against Sgt. Fornoro," however, she did not meet with an employee of the EEOC, but rather, "[t]he EEO Director for New Jersey, Joanne Stipick." Compl. ¶19-20. Similarly, Plaintiff alleges that she was interviewed by Lieutenant Adlassnig, who presumably works in the EEO Office of the New Jersey State Police, for the purpose of filing an "EEOC complaint." *Id*. at ¶24. In New Jersey, many of the state departments and agencies have an Office of EEO Compliance which is intended to ensure compliance with federal equal employment opportunity laws and regulations, as well as the agency's own policies. *See* New Jersey Civil Service Commission, Division of "Division of Equal Employment Opportunity/Affirmative Action," www.state.nj.us/csc/about/divisions/eeo/index (last visited March 22, 2020); *see also* List of Equal Employment Opportunity/Affirmative Action Officers, New Jersey State Departments, Agencies and State Colleges & Universities, www.state.nj.us/csc/about/divisions/eeo/pdf/EEOHR%20List_Revised_2020.pdf. These EEO offices internally investigate employee complaints of discrimination and harassment, but they are distinct from the federal agency known as Equal Employment Opportunity Commission (EEOC).

Sergeant Crawford responded and asked Plaintiff if she would be willing to give a statement to the New Jersey Attorney General's Office. *Id*. at ¶22.

On April 14, 2017, Plaintiff was interviewed by Lieutenant Adlassnig.[3] *Id*. at ¶24. It appears that Plaintiff believed the purpose of the interview was to file an EEOC Complaint. *Id*. Plaintiff reviewed and signed the interview report on April 29, 2017, and then, what Plaintiff presumed to be an EEOC Complaint, was filed on her behalf. *Id*. at ¶24. At that time, Plaintiff was supposedly told that she did not need to take any additional action until she was notified of an outcome. *Id*. at ¶26. After nearly a year without a response, on April 8, 2018, when Plaintiff contacted Sergeant Crawford – in the State Police's EEO department -- about her Complaint, she was informed that Sergeant Crawford no longer worked in the EEO department. *Id*. at ¶27. Plaintiff was directed to contact Ms. Stipick. *Id*. at. ¶¶27-28. However, Plaintiff's repeated attempts to contact Ms. Stipick were fruitless. *Id*. An EEO employee informed Plaintiff that her complaint was still being processed and she would receive a decision in the mail. *Id*. at ¶29.

On February 6, 2019, Plaintiff was informed by a Deputy Attorney General ("DAG") that Plaintiff was not considered a "formal complainant" but "had been treated as a witness to the actions" she reported. *Id*. at ¶31. On March 18, 2019, Plaintiff was informed, via letter from the EEO, which memorialized her conversation with the DAG, and stated that her complaint had been closed in August 2018, and the EEO would not be re-opening the matter. *Id*. at ¶32.

---

[3]  Plaintiff has not identified where Lieutenant Adlassnig was employed; presumably, Lieutenant Adlassnig, like Sergeant Crawford and Ms. Stipick, works for the state's EEO office or for the Office of the Attorney General, and not the Federal EEOC.

5

On June 18, 2019, Plaintiff filed the instant lawsuit alleging the following claims against all defendants: sex-based discrimination in violation of Title VII (Count 1); hostile work environment in violation of Title VII (Count 2); discrimination in violation of the New Jersey Law Against Discrimination (NJLAD) (Count 3); discrimination in violation of the Equal Protection Clause and Section 1983 (Count 4); infliction of emotional distress (Count 5); negligent inflection of emotional district (Count 6). Plaintiffs remaining claims are asserted against the State of New Jersey and the New Jersey State Police, only: negligent hiring (Count 7); negligent supervision (Count 8); negligent retention (Count 9); vicarious liability (Count 10); respondeat superior (Count 11); ratification (Count 12); failure to warn/misrepresentation (Count 13); gross negligence (Count 14); civil conspiracy (Count 15). Thereafter, Defendants filed the instant motion to dismiss.

## II. STANDARD OF REVIEW

### A. Federal Rule of Civil Procedure 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quotations omitted). Under such a standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must do more than allege the plaintiff's

6

entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (citation and quotations omitted); *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citation and quotations omitted)).

In sum, under the current pleading regime, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quotations omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. (quotations omitted). Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. (quotations and brackets omitted).

### III. ANALYSIS

### A. The Title VII Claims

A plaintiff alleging a violation of Title VII of the Civil Rights Act must exhaust the administrative remedies available through the EEOC before bringing his or her claim in court. 42 U.S.C. § 2000e–5(e); *Metsopulos v. Runyon*, 918 F. Supp. 851, 857 (D.N.J. 1996) ("It is axiomatic that a plaintiff generally must timely file an Equal Employment Opportunity complaint before commencing a Title VII action."). A plaintiff must file a charge with the EEOC within 180 days after the occurrence of an allegedly unlawful employment practice, or within 300 days of the discriminatory act if the plaintiff initiates the EEO process in a state agency. 42 U.S.C. §§ 2000e-5(e), 12117(a); *Cortes v. Univ. of Med. & Dentistry of N.J.*, 391 F.Supp.2d 298, 310 (D.N.J. 2005) ("A prospective Title VII plaintiff in a deferral state like New Jersey has 300 days to file a charge with the EEOC"). When a charge is filed, the EEOC conducts its investigation and issues a "right to sue letter." *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001); *Barzanty v. Verizon PA, Inc.*, 361 F. App'x. 411, 413–14 (3d Cir. 2010) ("Before filing a lawsuit, a plaintiff must exhaust her administrative remedies by filing a timely discrimination charge with the EEOC. The EEOC will then investigate the charge, and the plaintiff must wait until the EEOC issues a right-to-sue letter before she can initiate a private action."). After that process is completed, the claimant is considered to have exhausted his or her administrative remedies. *Barzanty,* 361 F. App'x at 413-14. The purpose of requiring exhaustion is to afford the EEOC the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court." *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996).

The United States Supreme Court recently explained that a "charge-filing requirement is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts." *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1851 (2019).

Thus, a plaintiff's failure to exhaust his or her administrative remedies by filing a charge with the EEOC is not a jurisdictional prerequisite to filing an employment action, and may be bypassed under certain circumstances. *Wilson v. MVM, Inc.*, 475 F.3d 166 (3d Cir. 2007) (explaining that "timely exhaustion of Title VII administrative remedies [is] not jurisdictional. . . . It is a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."); *see also Kacian v. Donahoe*, 9 F. Supp. 3d 546, 551 (W.D. Pa. 2014) ("A district court can therefore bypass the exhaustion requirements under certain limited circumstances, using equitable doctrines such as waiver, estoppel, tolling, or futility."). "Failure to exhaust administrative remedies is an affirmative defense, 'in the nature of statutes of limitation' . . . . [I]t is grounds for dismissal on a Rule 12(b)(6) motion." *Slingland v. Donahoe*, 542 F. App'x 189, 191 (3d Cir. 2013) (quoting *Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir. 1997)).

Defendants contend that Plaintiff's Title VII claim is subject to dismissal because Plaintiff's Complaint does not allege that she filed a charge with the EEOC, which is a mandatory pre-requisite to filing a Title VII claim, nor has Plaintiff received a right-to-sue letter. ECF No. 8, Def. Br. at 8-11. Defendants submit that Plaintiff did not file a complaint with federal Equal Employment Opportunity Commission, but rather an internal administrative complaint with the New Jersey State Police's EEO Office. *Id*. at 12-13.

Plaintiff does not directly dispute Defendant's contention that she did not file an EEOC charge, but rather, argues that her Title VII claims are subject to equitable tolling because Plaintiff "exercised extraordinary diligence" in attempting to resolve her claim with the EEO and was not aware that pursuing her complaint with the EEO was insufficient to exhaust her administrative remedies. ECF No. 11, Pl. Br. at 8. Plaintiff insists that extraordinary circumstances are present here, because "Defendants State of New Jersey and New Jersey State Police . . . intentionally

misled Plaintiff into believing that she had filed an EEOC complaint and needed to take no further action." *Id*. at 9. Thus, Plaintiff argues that the statute of limitations was equitably tolled until March 18, 2018, when Plaintiff received the letter from the EEO indicating that her matter had been closed.

Absent application of a tolling doctrine, the charge-filing period for Plaintiff's Title VII claims began to run, at the latest, on January 27, 2017, when Plaintiff resigned from the Academy.[4] *Bailey v. United Airlines*, 279 F.3d 194, 199 (3d Cir. 2002) ("The Supreme Court has held that the charge-filing period begins to run on a claim of unlawful discrimination when the employer establishes its official position and communicates that position by giving notice to the affected employee."); *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) (explaining that, under federal law, discrimination claims accrue at "the time of the discriminatory act, not the point at which the consequences of the act become painful," and finding that plaintiffs' wrongful termination claims accrued on the date the employer told the plaintiffs they were anticipated to be fired, not on the date plaintiffs were actually fired, because the illegal act was the decision to fire the plaintiffs, not the firing itself). While Plaintiff's Complaint is not specific on this point, it appears that Plaintiff filed a complaint with the State Police's internal EEO office, and did not file a formal charge with the federal EEOC. In her opposition to the instant motion, Plaintiff contends that she "was never made aware of the fact that filing a complaint with the EEO was insufficient." Pl. Br. at 8. Ostensibly, Plaintiff concedes that she did not file a charge with the EEOC, a mandatory pre-

---

[4] While Plaintiff was not terminated from the Academy, her hostile work environment and discrimination claims sound in discriminatory actions and offensive conduct which occurred while she was a recruit at the Academy. Thus, those allegedly discriminatory actions took place prior to, but no later than, January 27, 2017.

10

requisite to filing a Title VII action. Thus, absent application of a doctrine that will excuse the exhaustion requirement, Plaintiff's Title VII claims must be dismissed for failure to exhaust.[5] Here, Plaintiff relies on the doctrine of equitable tolling.

### i. Equitable Tolling

"Title VII's administrative timing requirements may be equitably tolled where: (1) the defendant has actively misled the plaintiff as to the cause of action; (2) the plaintiff has 'in some extraordinary way' been prevented from timely asserting [her] rights; or (3) the plaintiff has timely but mistakenly asserted [her] rights in the wrong forum." *Word v. Potter*, 149 F. App'x 97, 99 (3d Cir. 2005) (quoting *Robinson*, 107 F.3d at 1020–21). "'A petitioner seeking equitable tolling bears the burden to show that he diligently pursued his rights and that some extraordinary circumstances stood in [the] way.'" *Hanani v. N.J. Dep't of Evnt'l Protection*, 205 F. App'x 71, 77 (3d Cir. 2006) (quoting *Satterfield v. Johnson*, 434 F.3d 185, 188 (3d Cir. 2006)). "[E]quitable tolling is proper only when the 'principles of equity would make [the] rigid application [of a limitation period] unfair.'" *Pizio v. HTMT Glob. Sols.*, 555 F. App'x 169, 176 (3d Cir. 2014) (quoting *Miller v. N.J. State Dep't of Corr.,* 145 F.3d 616, 618 (3d Cir. 1998)).

Here, Plaintiff has not shown that equitable estoppel is applicable under the instant circumstances. Plaintiff argues that tolling is appropriate because Defendants "actively misled" her regarding her rights, because each of her attempts to follow up with the EEO office was to no avail. However, as pled, Plaintiff's Complaint does not support such a theory. In response to

---

[5]     Even assuming that the charge-filing period on Plaintiff's Title VII claims was tolled until March 18, 2018, when Plaintiff received the letter informing her of the status of her EEO complaint, she did not file a charge with the EEOC within 300 days of receiving the letter. As alleged, there is no indication that Plaintiff ever filed an EEOC charge, let alone a timely charge.

11

Plaintiff's inquiry regarding whether "there was an informal way to bring the conduct to Sgt. Fornoro's attention," Sergeant Crawford asked Plaintiff if she would be willing to give a statement to the Office of the New Jersey Attorney General, scheduled a meeting, and arranged for Plaintiff to file a complaint. Compl. ¶21. It appears that Plaintiff presumed, without clarifying, that she was filing a formal EEOC charge. However, there is no indication from the facts as pled, or as argued on this motion, that Defendants actively misled Plaintiff into believing that she was filing a formal charge with the EEOC, rather than an internal complaint with a state agency. To the extent Plaintiff believed that while she was communicating with individuals at *state* agencies, she was, in fact, filing a *federal* EEOC Complaint, that mistaken belief was the product of Plaintiff's unilateral misperception. Nowhere does Plaintiff allege, or argue on this motion, that she actually sought to verify whether she, in fact, was filing a formal EEOC complaint, or that she was told by Defendants that the process she was pursuing constituted an EEOC proceeding. That is fatal to Plaintiff's equitable tolling argument.

As alleged, Plaintiff acknowledged that she reached out to Sergeant Crawford and inquired as to whether she could file an informal complaint. Plaintiff has not alleged that she ever sought to escalate the matter to a more formal proceeding, or that she inquired of Sergeant Crawford – or anyone else in the State's EEO office – as to whether she needed to file a formal charge with the federal EEOC in order to preserve her litigation rights or how she could do so. Plaintiff has not alleged that either Sergeant Crawford or Joanna Stipick – both of whom are state employees – distorted the nature of the paperwork she filed, or assured her that she was, in fact, filing a Federal EEOC Complaint. The State was not obliged to advise her of her potential federal claims, and the lack of advisement in that regard does not give rise to equitable tolling. Accordingly, Plaintiff has

not shown that Defendants "actively misled" her such that the administrative exhaustion requirement was tolled.

Similarly, Plaintiff has not demonstrated that she "timely but mistakenly asserted [her] rights in the wrong forum." *Word*, 149 F. App'x at 99. As an initial matter, Plaintiff has not alleged that she was clearly seeking to file a Federal EEOC charge. As alleged, Plaintiff sought to file an informal grievance in order to bring the discriminatory conduct to Sergeant Fornoro's attention. It appears that Sergeant Crawford and Ms. Stipick assisted her in doing so. Thus, the instant case is not one where it is apparent that Plaintiff actively sought to file a Federal EEOC charge, but erroneously and timely filed such a charge in the wrong forum. There is no indication that Plaintiff was actually seeking to file a Federal EEOC charge, at the time she filed her EEO complaint, and, in fact, to date Plaintiff has not filed such a charge, or sought to do so. Furthermore, Plaintiff's mistaken belief that her complaint filed with the state EEO constituted a federal EEOC charge does not warrant equitable tolling. In *Fenton v. Port Auth. of NY & NJ,* 777 F. App'x 45, 49 (3d Cir. 2019), the plaintiff filed a complaint with the Port Authority of New Jersey's internal EEO office, under the mistaken believed that he had filed his claim with the EEOC office. *Id*. at 49. He alleged that the Port Authority employees referred to the internal office "as the 'EEOC office' or 'EEO office'[which] made it appear that the office was affiliated with the [EEOC]." *Id.* (second alternation in original). The Third Circuit rejected Plaintiff's arguments, finding that equitable tolling was not applicable because "the situation described amounts to a failure on [plaintiff's] part to exercise due diligence." *Id*. Here, Plaintiff similarly failed to exercise sufficient due diligence to ascertain the nature of the complaint being filed and the steps necessary to preserve her federal claims. *Pizio*, 555 F. App'x at 176 ("The benefit of tolling is meant for those who have exercised reasonable diligence in investigating and bringing

[their] claims.") (internal citations and quotation marks omitted). To the extent there was any confusion about the forum where Plaintiff was filing her Complaint, it appears to stem from Plaintiff's lack of awareness that a Federal EEOC charge was a pre-requisite to filing a Title VII suit and does not justify equitable tolling. *See Sch. Dist. of Allentown v. Marshall*, 657 F.2d 16, 21 (3d Cir.1981) ("[I]gnorance of the law is not enough to invoke equitable tolling.").

Accordingly, the Title VII claims, Counts One and Two of Plaintiff's Complaint, are dismissed.[6]

### B. Section 1983

Congress has not codified a statute of limitations applicable to suits for Section 1983 claims and has instead "determined that gaps in federal civil rights acts should be filled by state law, as long as that law is not inconsistent with federal law." *Hardin v. Straub*, 490 U.S. 536, 538 (1989). Thus, the statute of limitations for Section 1983 claims is "governed by the statute of limitations that applies to personal injury tort claims in the state in which such a claim arises." *Kach v. Hose*, 589 F.3d 626, 639 (3d Cir. 2009); *see also Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Cito v. Bridgewater Township Police Dept.*, 892 F.2d 23, 25 (3d Cir. 1989). Under New Jersey law,

---

[6] Because the statute of limitations has expired and Plaintiff has not shown that equitable tolling applies, despite the opportunity to do so on this motion, the Court dismisses Plaintiff's claims with prejudice. Plaintiff's Complaint does not allege facts supporting the application of equitable tolling; she does not allege that she sought to file a Federal EEOC charge, but was prevented from doing so by Defendants. On this motion, Plaintiff had ample opportunity to identify such facts, or move to amend her Complaint to proffer additional facts in support of an equitable tolling theory, to the extent they exist. Plaintiff has not done so, and thus, the Court presumes any attempted amendment would be futile. *See Phillips,* 515 F.3d at 236 (explaining that a court may dismiss a claim under Rule 12(b)(6) without permitting a curative amendment if such "an amendment would be inequitable or futile").

personal injury actions are subject to a two-year statute of limitation. *See* N.J. Stat. Ann. § 2A:14–2(a) ("every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this State shall be commenced within two years next after the cause of any such action shall have accrued"). A state's tolling principles also govern Section 1983 claims when they do not conflict with federal law. *Kach,* 589 F.3d at 639. However, "the accrual date of a Section 1983 cause of action is a question of federal law that is not resolved by reference to state law." *Wallace*, 549 U.S. at 388; *see also Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516, 520 (3d Cir. 2007) ("[T]he accrual date for federal claims is governed by federal law, irrespective of the source of the limitations period."). While a plaintiff is not required to plead that the claim has been brought within the statute of limitations, *Ray v. Kertes*, 285 F.3d 287, 297 (3d Cir. 2002), the Supreme Court has observed that if the allegations of a complaint, "show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim." *Jones v. Bock*, 549 U.S. 199, 215 (2007).

The parties' arguments on the timeliness of the Section 1983 claims largely mirror their arguments regarding the Title VII claims. Defendants argue that Plaintiff's Section 1983 claim, and all of her state law claims, are barred by New Jersey's two-year statute of limitations for tort actions. Def. Br. at 5. Plaintiff responds that the statute of limitations on her Section 1983 claim was equitably tolled because Defendants actively misled her into believing that her claims were processed. Pl. Br. at 13-14. Similarly, Plaintiff contends that Defendants intentionally misinformed her as to the status of her claims, causing her to delay seeking legal action. *Id*. at. 15.

Like Plaintiff's Title VII claims, the statute of limitations on Plaintiff's Section 1983 claims began running no later than January 27, 2017, when she left the Academy. Plaintiff did not file

15

her lawsuit until June 19, 2019 – more than two years after leaving the police academy – thus, absent application of a tolling doctrine, the statute of limitations has expired and Plaintiff's Section 1983 claims must be dismissed. Plaintiff has not demonstrated that the statute of limitations was equitably tolled, for the same reasons as to why equitable tolling is not available on her Title VII claims. Accordingly, Defendant's motion to dismiss Count Four, Plaintiff's Section 1983 claim, is granted as barred by the two-year statute of limitations.

### C. The State Law Claims

Because the Court has dismissed the federal claims, the remaining potential basis for this Court's jurisdiction over Plaintiff's state law claims is supplemental jurisdiction pursuant to 28 U.S.C. § 1367. "Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 387 (1998) (citation and internal quotation marks omitted). Where a district court has original jurisdiction pursuant to 28 U.S.C. § 1331 over federal claims and supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367(a), the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); G*rowth Horizons, Inc. v. Delaware County, Pennsylvania*, 983 F.2d 1277, 1284–1285 (3d Cir. 1993). In exercising its discretion, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'" *Growth Horizons, Inc.*, 983 F.2d at 1284 (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966)). Where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction

over state claims. *United Mine Workers*, 383 U.S. at 726; *Growth Horizons, Inc.*, 983 F.2d at 1284–1285.

Having dismissed all the federal claims at earliest possible state of the litigation, and finding no prejudice to the parties, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.[7]

### D. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED**. Count One, the Title VII discrimination claim; Count Two, the Title VII hostile work environment claim; and Count Four, the Section 1983 claim are dismissed with prejudice because they are barred by the statute of limitations. In light of the dismissal of the federal claims at this early phase of the litigation, the Court declines to exercise supplemental jurisdiction over the state law claims. Pursuant to 28 U.S.C. § 1367(d), the statute of limitations, to the extent it has not already expired, on Plaintiff's state law claims is tolled for thirty days from the date of the Order accompanying this Opinion, to allow Plaintiff to file a complaint in state court if she so elects.

Date: March 23, 2020.

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge

---

[7] As explained, *supra*, New Jersey law prescribes a two-year statute of limitations for tort actions. *See* N.J. Stat. Ann. § 2A:14–2(a). Accordingly, it appears that Plaintiff's state law claims may be also be subject to dismissal based on the statute of limitations. However, I will not specifically address the timelessness of the state law claims, because I decline to exercise supplemental jurisdiction over the state law claims.